May it please the Court, Counsel. My name is Elisa Massa. I represent 76-year-old Ryland Doyle Schuster, who is waiting in the medical unit at the Idaho State Correctional Facility for this Court to grant a remedy on a Santabello violation. I have three main points that I would like to argue in his case today. First, there is cause to excuse procedural default of the ineffective assistance of counsel claim. Secondly, constructive denial of assistance. And third, remedy. When Mr. Schuster ended his last conversation with Robert Pangburn in June of 2004 on a second resentencing, he understood that there was a discussion between them regarding appeal. And his expectation was that there would be contact between them in the next couple of days to discuss how to further appeal his case or move forward after resentencing. Six months passed, and he had heard no communication from Mr. Pangburn. After that six months, Mr. Schuster tuned to his own representation as he had in the past. He got a resentencing, didn't he? Pardon? He got a resentencing. He did get a resentencing, Your Honor. Well, what you're telling us is sort of washed out by the fact that he got a resentencing. I understand what you're talking about. The problem with the resentencing was that the resentencing occurred in front of the same judge, the same judge that had heard the original sentencing that had caused the judge to go beyond what the plea agreement was. And that problem was never cured. Let me be sure we can talk about it, but what does all this other stuff that happened before the second sentencing have to do with anything? I mean, he had a claim, his lawyer was so-and-so, but eventually he managed to get a resentencing. So whatever mistakes or oversight or whatever his lawyer did was cured by the fact that he got a sentencing. Now, he might not be happy with the resentencing, and we have to then consider whether or not the resentencing had to be before a different judge. But all of that delay stuff, I don't understand why that helps your client any. Your Honor, when I'm making reference to delay, I'm talking about subsequent to his resentencing with his second lawyer, not the problems that were created by his first lawyer. The delay that was caused by his second lawyer – So we're now at the second – at the resentencing, right? We're now past resentencing. You're just trying to say he's trying to get his Santabello claim heard by the Oregon Supreme Court? By the Idaho Supreme Court, yes. And so the causes that were external to him so that that could take place were his second lawyer, Mr. Payne Byrne, and the Idaho Supreme Court. The second lawyer, Mr. Payne Byrne, who failed to communicate with Mr. Schuster, ultimately filed an appeal that Mr. Schuster had no idea was pending behind – in front of the Idaho Supreme Court. Because Mr. Schuster had no idea, he turned to his own devices and filed pleadings in front of the Idaho Supreme Court. Which were not – they were mandamus – styled as mandamus pleadings. Your Honor, it is true that he titled those documents a petition for writ of mandamus and then a reconsideration. Under the laws of Lamarck – laws versus Lamarck, though, however, he was entitled as a pro se defendant to have wide latitude granted to his pro se pleadings. And the Idaho Supreme Court issued two orders in which they indicated that they'd given those pleadings due consideration and were ruling upon them with a denial. So it's Mr. Schuster's position that he raised his arguments fully and fairly in front of the Idaho Supreme Court, and they actually did make a ruling on the merits. So your argument is that those pro se pleadings were an appeal? Mr. Schuster's position is that he was raising those arguments – yes. What's your – you're the legal advocate here, so is it your position that those pro se pleadings that were styled petition for writ of mandate were the appeal that the Supreme Court of Idaho rejected when it denied those petitions? Yes. It's my position that the Supreme Court entitled in some of its orders and letters that his documents were, in fact, an appeal and they were being given, granted due consideration. But that is not how the Idaho Supreme Court actually treated them. It looks like they just treated them as mandamus petitions and they just denied them. And a mandamus is not the proper remedy, is not the proper procedural view. The problem with the way that the Idaho Supreme Court treated them is that their decision was summary in fashion, one paragraph. And so it's really impossible to know how they were truly treating them. There was correspondence where they titled them, made a reference to them as an appeal. One of the orders said you already have an appeal pending which raises the same issues. And so it's really confusing as to whether or not that's how the Idaho Supreme Court truly handled his pleadings. What we do know is that the Idaho Supreme Court did not actually look at the merits of the arguments. Did he actually allege a sense of bail claim in the – in those supplemental documents? He did, Your Honor. In his first – Was it an IEC claim or was it a pure Santabello claim? He made reference to both of them. The first pleading that he filed in the Idaho Supreme Court, the preemptory petition for writ of mandate, he didn't use the word Santabello, but he made a long argument about how he had been resentenced by the same judge, and he also raised ineffective assistance of counsel. When the Idaho Supreme Court responded with its first order denying that petition and made reference to an appeal being on file, Mr. Shuster's response to that was to file another pleading that basically said, what appeal are you talking about? I'm the only one that's filed documents in front of you, because at that time he had no idea that Mr. Pangburn had filed anything in front of the Idaho Supreme Court. Did he become aware, though, that there was an appeal? He actually, Your Honor, he became aware of a reference to appeal by the first order in February of 2005 and responded to that by saying, I don't know what you're talking about, but his actual knowledge of what Mr. Pangburn filed did not happen until Judge Lodge in the Federal District Court reviewed his first petition for habeas corpus and made reference to the specific arguments that had been raised by Mr. Pangburn. And Mr. Pangburn, for the first time then, saw the appellate documents that had been filed by Mr. Pangburn. So why couldn't he have asked for clarification from the Idaho court? I mean, it says there's already an appeal. He said he wrote back to the court saying, I don't know what you're talking about. He didn't write. He did file. What he filed was a motion for reconsideration of the petition for writ of mandamus and argued that he didn't know what they meant by reference to appeal and asked that his original petition for writ of mandate be considered. The Idaho Supreme Court again followed with an order that said we've given your pleadings due consideration and we're denying your motion. I see that I have two minutes, Your Honor. I'd like to review those for rebuttal. Thank you. We'll hear from the State. Thank you. May it please the Court. My name is Jessica Lorello and I represent the Respondent in this case. The Petitioner's claims that it appears today that he is not arguing that his claims were procedurally defaulted, that he's only arguing the cause and prejudice issue. That argument fails, however, because he failed to establish cause and prejudice. And I'd first like to address this point that he has argued that he had no idea that Mr. Pangburn filed an appeal. There was an evidentiary hearing in this case and there was a finding by the district court that he, in fact, approved that appeal and knew that Mr. Pangburn was going to file it. Now, while he may not have known what the issues were that Mr. Pangburn intended on raising, he did, in fact, approve the appeal and he knew it was being filed. That so the assertion that he had no idea is simply incorrect. Well, it's one thing to give instructions to a lawyer and hope that he follows them. It's another thing to actually know that this has happened. And it didn't seem to me like the district court found that he actually knew that the lawyer had carried out his instructions. That, well, that's true, Your Honor. Nobody sent him any briefs or anything. I believe that the counsel did not send him the briefs until after they had been written. He certainly didn't send them to him in advance for an approval, but there is a letter in the record where actually he sent them to Mr. Schuster's wife and there was an indication in the letter that he was concerned that Mr. Schuster might not be getting his mail. So those were forwarded to his wife. But it was definitely, indeed, not until after the appeal was filed. But you're saying the record reflects and the district court found he knew about the appeal and he ultimately knew what had been filed. He ultimately did know. The finding by the district court was that the petitioner authorized the appeal. Yes. That was the fact of the matter. That may be. But if you, if the appeal goes up without Santabella, which is what he wants it to be, wants to be included, when did he, did he have the opportunity to know while this process was going on with the Idaho court that the, what was being argued did not include Santabella? I think he had the opportunity to find that out. Yes, Your Honor, I do. How? And here's why. Because when he files his, well, first of all, he was resentenced on June 18, 2004. On August 18, 2004, he sends counsel a letter that says, I haven't heard from you. What's going on with my case? Here's what I want you to do. I want you to file a Rule 35 motion that basically raises claims that my sentence is illegal and some other things. It's not really clear from that letter what he thinks is illegal about his sentence. It suggests certainly that he thinks it's illegal for things that have to do with the victim's presentation of a victim's statement and something to do with the evaluation. There's nothing in that letter that says, I want you to raise a claim that I should not have been resentenced by the same judge. Nothing in the letter is that effect. In fact, the letter just says, I want you to file this Rule 35 motion. The next thing that happens is approximately two months later, he files his own motion in the State District Court raising these claims that he had advised counsel to raise in the letter. And then another thing that I think is somewhat significant in this case is counsel was contemporaneously representing him on a civil case related to the same crime, and there's some correspondence in the record related to that. And actually, counsel had appeared at settlement conferences in relation to that. So that was going on at the same time in October of 2004. Mr. Schuster then himself files a pro se document titled Motion for Specific Relief in December of 2004 with the State District Court. And then that is denied. There's an order denying his Rule 35 motion in January of 2005. One month later, he files his written mandamus. And then this is when he starts getting correspondence from the court, the Idaho Supreme Court, that says, you already have an appeal pending that raises these same issues. And it's very difficult really to tell what issues Mr. Schuster is trying to raise pro se. I mean, the pleadings are fairly lengthy and difficult to determine. And I suspect the Supreme Court said that in their order denying it because there hadn't been a brief filed by Mr. Payneburn at that point. There was a notice of appeal, and the issue statement said, did the trial court err when it failed to follow the State's sentencing recommendation? So I can see why the Idaho Supreme Court may have looked at those two things and thought that they were going to be the appeal that was filed by counsel was going to be addressing these same things. I mean, the claim ultimately raised was basically Eighth Amendment cruel and unusual punishment and excessive sentence. But it appeared certainly to the Idaho Supreme Court that the appeal that was filed by counsel was going to be raising the same issues as filed in the writ of mandamus. So the court says, you already have this appeal pending. Mr. Schuster comes back and says, I don't know what you're talking about. There's no appeal been authorized, which is actually inconsistent with the finding of the district court about him knowing that an appeal had at least been authorized. So that's his response to the court's order denying the writ. And then the Idaho Supreme Court comes back and just denies that basically motion for review. So at that point, this is a really long way to get to answer your question, but at that point, he has an opportunity to contact counsel and say, give me a brief. What issues have you raised? Here's some issues I'd like to have raised, something along those lines, or to file something with the Idaho Supreme Court that says, you know, a motion to proceed pro se or something along those lines. He doesn't do any of that, actually. And that's his opportunity to get something in front of the court that he wants to have raised. And he just didn't take advantage of that opportunity. Now, back to the question of whether his writ of mandate raised these issues, to the extent it did raise the issues that he's now trying to raise in Federal habeas, which is the Santabella validation based solely on the failure to be resentenced by a different judge in these constructive assistance of counsel claims, which are really actually quite unclear what all of those claims are. Even assuming that he raised those claims in his petition for writ of mandate, that's just not the procedurally proper mechanism for raising those claims before the Idaho Supreme Court. And I know he keeps calling it an appeal, but it's not an appeal. If it's an appeal, I don't know what it's an appeal from. And one of the main things that would weigh against it being an appeal is there was never a notice of appeal filed by him. So if you're looking at a story that I didn't know anything about an appeal, and here I'm trying to appeal, well, the first thing he's got to do is file a notice of appeal. And it's got to be from something. This petition for writ of mandate is not a notice of appeal from anything. And, in fact, it was. Kennedy, what was the relief he was seeking? Ultimately, the relief he's seeking is to be placed on probation. I mean, he ---- But the mandate was direct. His application for mandate to the State district court to grant him parole? To put him on probation, to follow the terms of the plea agreement, which was a nonbinding plea agreement. The only thing he was entitled to under the plea agreement was a recommendation by the State, which the State made. And, you know, the way we got to this breach in the first place is sort of unique, I think, to Idaho law. It's certainly not a breach under any federal constitutional case that I'm aware of, because the State actually made the recommendation. In Idaho, there's this doctrine that says basically if you make an argument that's sentencing that's fundamentally at odds with your sentencing recommendation, that's a breach. So that's really how we got to this whole breach claim to begin with. So I'm trying to understand. Is your position that he has now precluded from raising this claim in the State courts? You think he hasn't raised it and he can't raise it anymore? He cannot. It would be untimely if he tried to raise it. I think he hasn't raised it. I think to the extent some of his claims were raised in the petition for writ of mandate, that's not the procedurally proper mechanism for raising an ineffective assistance of counsel claim or basically a trial error claim, which is what the Santabello claim is. He should have raised a or filed a post-conviction petition. He should have filed a post-conviction petition. And that's too late now? It is too late. Are there no exceptions to the time bar? He there in Idaho, you have certain exceptions for tolling that he probably would not qualify for under the circumstances of this case. He has one year, and he would have had to file it one year if he wanted to claim an ineffective assistance of counsel at resentencing. He would have had to file it one year from the date of the judgment following resentencing, which was in about June of 2004. And the Mandamus petition would not have been, shouldn't have been construed as a petition for post-conviction relief? It could not, because it would have to first be filed in the State district court. You couldn't just file it for the first time in the Idaho Supreme Court. And I see I'm out of time, so I'll just, for the reasons set forth in the State's brief, the State asks this Court to affirm the district court's order concluding that the claims are procedurally defaulted and that Mr. Schuster did not establish cause and prejudice. Okay. Thank you. I think you have a little time left. Thank you, Your Honor. I first want to address this issue of whether or not Mr. Schuster had to file an action for post-conviction relief. Under State v. Smith, which is a 2009 Idaho case cited in, I believe, my reply brief, it might have been in my initial brief, it is very clear that he absolutely had the avenue to directly appeal an effective assistance of counsel. A post-conviction action was not required in his case. There was enough evidence in this record without factual development to establish that Mr. Pangburn was ineffective at resentencing. So this argument that he had to file a post-conviction relief action is just not ‑‑ is not correct. Also, there was no finding from the Court regarding a procedural bar. What the Idaho Supreme Court ruled was that they ‑‑ Do you think ‑‑ this is Smith v. State, right? 203p3, 1221, that's the case you're talking about? February 2009. It is 2009. It's Smith v. State. And you think it says you can raise it in direct appeal? In effective assistance of counsel. First of all, prior to that case, Your Honor, it's been ‑‑ it wasn't brand-new contention that you can do either or. But I'm not sure what good it does. It was not raised in appeal, right? In Smith v. State, in effective assistance ‑‑ In your client's case. It was raised by him in his pleadings before the Idaho Supreme Court. It was not raised by Mr. Pangburn because Mr. Pangburn had an actual conflict and couldn't raise his own ineffective assistance of counsel, which was a cause external to Mr. Schuster. I see that my time is up. Thank you. Case is argued. We'll stand for a minute.
judges: Kozinski, Fisher, Paez